# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

In the Matter of Christi Anne Misocky, Respondent

Appellate Case No. 2021-001258

Opinion No. 28079
Submitted December 30, 2021 – Filed January 19, 2022

## DISBARRED

Disciplinary Counsel John S. Nichols and Assistant
Disciplinary Counsel Julie K. Martino, both of Columbia,
for the Office of Disciplinary Counsel.

Jonathan M. Harvey, of Columbia, for Respondent.

**PER CURIAM:**   In this attorney disciplinary matter, Respondent and the Office
of Disciplinary Counsel (ODC) have entered into an Agreement for Discipline by
Consent (Agreement) pursuant to Rule 21 of the Rules for Lawyer Disciplinary
Enforcement (RLDE) contained in Rule 413 of the South Carolina Appellate Court
Rules (SCACR).  In the Agreement, Respondent admits misconduct, consents to
disbarment, and agrees to pay restitution and costs.  We accept the Agreement and
disbar Respondent from the practice of law in this state.  The facts, as set forth in
the Agreement, are as follows.

## I.

### Matter A

Client A hired Respondent in late 2016 to handle a child support modification
action after Client A's ex-wife filed a Rule to Show Cause.  The York County
Family Court issued a temporary order in December 2016.  Respondent failed to
adequately communicate with Client A about the status of the action until a hearing
was scheduled for August 7, 2017.  Prior to the hearing, on August 3, 2017,

Respondent filed a Rule to Show Cause due to ex-wife's alleged failure to comply with the temporary order. The hearing was continued and mediation was scheduled for September 22, 2017. Respondent did not communicate with Client A about the reason for the continuance or the mediation and failed to diligently work on the case. Respondent and Client A signed a consent order to withdraw as counsel for Client A on September 18, 2017. The family court signed and filed the consent order a week later. The case was eventually dismissed pursuant to the 365-day rule.

ODC mailed Respondent a notice of investigation on September 29, 2017, requesting a response within fifteen days. Having received no response, ODC served Respondent with a letter pursuant to *In re Treacy*, 277 S.C. 514, 290 S.E.2d 240 (1982), on October 30, 2017, again requesting a response. The certified letter, which was sent to Respondent's AIS address, was returned unclaimed. On November 14, 2017, ODC served Respondent at her AIS address with a subpoena requiring Respondent to provide a copy of Client A's file.

Respondent submitted a response to the notice of investigation and subpoena on December 18, 2017. Respondent did not address Client A's allegations, instead claiming Client A's wife filed the complaint due to a personal grudge Client A's wife had with Respondent. In response to the subpoena for the client file, Respondent provided only an invoice of fees charged, a copy of the motion to withdraw as counsel for Client A, and a copy of a proposed order of continuance dated August 3, 2017. Respondent provided an additional response on March 7, 2018, in which she denied Client A's allegations but provided no additional documentation from the file or other evidence to support her denial.

Respondent admits her conduct in this matter violated the following Rules of Professional Conduct, Rule 407, SCACR: Rule 1.3 (requiring diligence); Rule 1.4 (requiring adequate communication); Rule 8.1(b) (prohibiting a knowing failure to respond to an ODC inquiry); and Rule 8.4(e) (prohibiting conduct prejudicial to the administration of justice).

**Matter B**

Client B hired Respondent on December 12, 2016, to bring a foreclosure action against a borrower. Client B made three payments totaling $5,297.50 for the representation. Respondent filed the foreclosure action in York County on March 27, 2017. Respondent was late to the first hearing in the case, and when she did arrive, she was not prepared. The master-in-equity continued the hearing and

rescheduled it, but Respondent failed to appear for the second hearing. Thereafter, communications between Client B and Respondent broke down. Client B attempted to call Respondent several times with no success. Client B also emailed Respondent in an attempt to reach her, but Respondent did not respond. The master-in-equity issued a notice of foreclosure sale on September 21, 2017. Respondent submitted a revised affidavit of attorney's fees on September 27, 2017, in which she requested $5,597.50 in fees—$300 more than Client B had already paid Respondent.

The master-in-equity accepted the highest bid offered at the public sale on November 6, 2017. He issued an order of sale and disbursement on November 20, 2017, along with a check in the amount of $44,611.50, payable to Respondent and Client B. The check represented the net proceeds of the sale, including attorney's fees and costs. On December 13, 2017, the master-in-equity issued an order for disbursement of funds, in which he observed that Respondent and Client B had a dispute over the amount of attorney's fees and costs and noted that the check had not yet been negotiated. The master-in-equity ordered Respondent to deposit the check into her trust account and to pay Client B the proceeds of the sale, plus reimbursement to Client B of any amounts already paid to Respondent. Respondent endorsed the check and attempted to deposit it without Client B's endorsement. The bank refused the check, and Respondent subsequently lost the check.

On December 28, 2017, the master-in-equity emailed Respondent, reminding her that she should have properly endorsed the check and deposited the funds in her trust account. The master issued a replacement check, required Respondent to pay $30.00 to stop payment on the first check, and informed Respondent that she was required to disburse the funds in accordance with his December 13, 2017 order.

Respondent held back the entire $5,597.50 as attorney's fees, even though Client B had already paid her $5,297.50, and she was entitled to keep only an additional $300. Client B filed a claim with the Lawyers' Fund for Client Protection and was awarded $5,297.50.

ODC mailed Respondent a notice of investigation to her AIS address on November 14, 2017, requesting a response within fifteen days. Also on November 14, 2017,

ODC served Respondent at her AIS address with a subpoena requiring her to provide a copy of Client B's file.

Respondent provided a response on December 18, 2017, that did not address the allegations of misconduct. Instead, Respondent blamed her paralegal for encouraging Client B to file a complaint. In response to the subpoena for the client file, Respondent provided only one email from her paralegal to Client B, one page of the master's order for disbursement of funds, and receipts of fee payments Client B made to Respondent.

Respondent admits her conduct in this matter violated the following Rules of Professional Conduct, Rule 407, SCACR: Rule 1.3 (requiring diligence); Rule 1.4 (requiring adequate communication); Rule 1.15 (requiring the safekeeping and prompt delivery of client funds); Rule 8.1(b) (prohibiting a knowing failure to respond to an ODC inquiry); and Rule 8.4(e) (prohibiting conduct prejudicial to the administration of justice).

**Matter C**

On January 19, 2017, Respondent conducted a real estate closing on property owned by Client C. After the closing, Client C realized the following errors in the closing disclosure: the closing date was incorrect; the amount of closing costs, set forth in two separate places, was listed inconsistently; an addendum stated that a second mortgage loan was to be paid off as part of the closing, but no second mortgage existed; and the alleged amount of the second mortgage, $906.50, was the same amount as the "Deed Stamps for Transfer" item on the closing disclosure.

Client C and her real estate agent (Agent) attempted to contact Respondent several times over the next two weeks to get clarification about the closing disclosure. Respondent did not respond to calls, text messages, or emails. On February 10, 2017, Client C and Agent went to Respondent's office. Respondent met with them but could not locate the file associated with the closing. On February 27, 2017, Respondent emailed Client C a revised closing disclosure, explaining that last minute changes in the terms and a software glitch caused the errors. The revised closing disclosure corrected only some of the prior errors and contained several additional errors. Client C sent two registered letters to Respondent requesting an explanation of the closing disclosure, but Respondent never responded. Respondent overcharged Client C $500 in closing costs.

On January 2, 2018, Client C filed a complaint against Respondent. ODC mailed

Respondent a notice of investigation to her AIS address on January 23, 2018, requesting a response within fifteen days. Having received no response, ODC served Respondent with a *Treacy* letter on February 12, 2018, again requesting a response. On February 15, 2018, ODC served Respondent at her AIS address with a subpoena requiring her to provide a copy of Client C's closing documents and Respondent's trust account records required under Rule 417, SCACR. The certified letter and subpoena were both returned to ODC as unclaimed.

Respondent provided a response to the notice of investigation on March 7, 2018, in which she blamed last minute changes and a software glitch for the errors and did not explain why she failed to correct all of the errors in the closing disclosure. Respondent provided closing documents and some bank statements in response to ODC's subpoena, but she failed to provide complete records as required under Rule 417, SCACR.

Respondent admits her conduct in this matter violated the following Rules of Professional Conduct, Rule 407, SCACR: Rule 1.1 (requiring thoroughness and preparation); Rule 8.1(b) (prohibiting a knowing failure to respond to an ODC inquiry); and Rule 8.4(e) (prohibiting conduct prejudicial to the administration of justice).

**Matter D**

On February 13, 2018, ODC received a complaint involving Respondent. ODC investigated the allegations but was unable to obtain clear and convincing evidence that Respondent had committed misconduct. However, Respondent failed to respond to ODC's March 3, 2018 notice of investigation or ODC's April 25, 2018 *Treacy* Letter, both of which were sent to Respondent's AIS address.[1] Respondent admits her failure to respond to the notice of investigation in this matter violated Rule 8.1(b), RPC, Rule 407, SCACR (prohibiting a knowing failure to respond to an ODC inquiry).

---

[1] The April 25, 2018 *Treacy* Letter, which was sent certified mail, was ultimately returned to ODC as unclaimed.

**Matter E**

On February 15, 2019, Respondent was arrested on two counts of forgery under state law. On March 1, 2019, this Court issued an order placing Respondent on interim suspension. *In re Misocky*, 425 S.C. 614, 825 S.E.2d 48 (2019). Respondent was subsequently indicted on numerous federal criminal charges involving conspiracy, forgery, counterfeiting, and identity theft, and the state charges were eventually dismissed in favor of federal prosecution.

The basis for the federal charges was that Respondent conveyed personal client information to two other individuals who used that information to make and pass counterfeit and forged securities in the names of the clients. These two other individuals deposited the money from the forged securities into a designated account from which Respondent paid them a percentage of the fraudulently obtained proceeds. Additionally, Respondent endorsed stolen checks; attempted to use another person's identity to facilitate a vehicle trade; possessed a fake driver's license and social security card and attempted to use them to purchase a car; purchased a different vehicle using a false identity; and possessed and passed two counterfeit checks with the intent to defraud a car dealership.

On July 6, 2021, Respondent entered into a plea agreement in which she agreed to plead guilty to a single count of conspiracy in exchange for the dismissal of the remaining five federal charges. Her guilty plea was entered on August 2, 2021. Respondent has not yet been sentenced.

ODC sent Respondent a notice of investigation on November 25, 2020, requesting a response within fifteen days. This notice was sent to Respondent's AIS email address and her AIS mailing address, along with two other email addresses and one other mailing address Respondent had previously provided. Respondent never responded to the notice of investigation.

Respondent admits her conduct in this matter violated the following Rules of Professional Conduct, Rule 407, SCACR: Rule 8.1(b) (prohibiting a knowing failure to respond to an ODC inquiry); Rule 8.4(b) (prohibiting criminal acts that reflect adversely upon a lawyer's honesty, trustworthiness, or fitness as a lawyer); Rule 8.4(c) (prohibiting criminal acts involving moral turpitude); and Rule 8.4(d) (prohibiting conduct that involves dishonesty, fraud, deceit, or misrepresentation).

**Matter F**

Respondent is also licensed to practice law in North Carolina. In 2017, the North Carolina Bar began an investigation based on several insufficient funds notices on Respondent's law firm IOLTA accounts with Wells Fargo. The preliminary investigation indicated Respondent mishandled funds. Initially, Respondent expressed a desire to cooperate with the North Carolina Bar and entered into a Consent Order of Preliminary Injunction on August 4, 2017, in which Respondent was enjoined from accepting or receiving any funds against any account in which client funds had been deposited. Respondent agreed to produce comprehensive records of all such funds to the North Carolina Bar. Although she initially provided some of the records requested by the North Carolina Bar, Respondent did not provide all of the required information and stopped communicating or cooperating with the investigation after August 2017.

On October 12, 2017, Respondent visited a branch of Bank of America in Ballantyne, North Carolina, and opened two new checking accounts and one savings account in her law firm's name. Thereafter, Respondent relocated her practice to South Carolina, and she accepted and disbursed client money through the new Bank of America accounts until February 2018. Respondent also commingled personal funds with client funds in these accounts.

On June 7, 2021, the North Carolina State Bar Disciplinary Hearing Commission entered an order suspending Respondent from the practice of law based on her failure to comply with the investigation of seventeen grievances pending against her.[2] Specifically, the order found Respondent failed to provide requested records and information, failed to fully cooperate with a subpoena for an audit, failed to respond to several letters of notice, and failed to cooperate with the North Carolina State Bar's effort to serve letters on her.

Respondent admits her conduct in this matter violated the following Rules of Professional Conduct, Rule 407, SCACR: Rule 1.15(a) (prohibiting the commingling of funds and requiring compliance with financial recordkeeping rules); Rule 1.15(b) (prohibiting the deposit of a lawyer's own funds in a client trust account beyond an amount necessary to pay account service charges); Rule 8.4(d) (prohibiting conduct involving dishonesty, fraud, deceit, or

---

[2] Twelve of these grievances were filed in 2017. Four more grievances were filed in 2018, and the remaining one was filed in 2020.

misrepresentation).[3]  Respondent also admits her conduct violates the following North Carolina Rules of Professional Conduct found in Chapter 2 of Title 27 of the North Carolina Administrative Code:  Rule 1.15-2 (requiring a lawyer to safekeep entrusted property); Rule 1.15-3 (establishing requirements for financial recordkeeping); Rule 8.1(b) (prohibiting a knowing failure to respond to a lawful disciplinary inquiry); Rule 8.4(b) (prohibiting criminal acts that reflect adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer); and Rule 8.4(c) (prohibiting conduct involving dishonesty, fraud, deceit, or misrepresentation).

## II.

Respondent admits her misconduct in the above matters constitutes grounds for discipline under the following Rules for Lawyer Disciplinary Enforcement, Rule 413, SCACR: Rule 7(a)(1) (committing violations of the Rules of Professional Conduct); Rule 7(a)(2) (engaging in conduct that violates rules of professional conduct from another jurisdiction); Rule 7(a)(3) (prohibiting a willful failure to comply with disciplinary subpoenas or a knowing failure to respond to an ODC inquiry); Rule 7(a)(4) (being convicted of a serious crime or crime of moral turpitude); Rule 7(a)(5) (engaging in conduct tending to pollute the administration of justice or conduct demonstrating an unfitness to practice law); Rule 7(a)(6) (violating the lawyer's oath found in Rule 402(h)(3), SCACR); and Rule 7(a)(7) (willfully violating a court order issued by a court in this state or another jurisdiction).

In the Agreement, Respondent consents to disbarment and requests that the sanction be imposed retroactively to the date of her interim suspension.  ODC does not oppose Respondent's request for retroactivity.  Respondent also agrees to pay, within thirty days, the costs incurred in the investigation and prosecution of this matter by ODC and the Commission on Lawyer Conduct, to reimburse Client C in the amount of $500, and to reimburse the Lawyers' Fund for Client Protection for any claims paid on her behalf.

---

[3] "A lawyer admitted to practice in this jurisdiction is subject to the disciplinary authority of this jurisdiction, regardless of where the lawyer's conduct occurs." Rule 8.5(a), RPC, Rule 407, SCACR.

# III.

We accept the Agreement and disbar Respondent from the practice of law in this state, retroactive to March 1, 2019, which is the date of her interim suspension.

Within fifteen (15) days of the date of this opinion, Respondent shall file an affidavit with the Clerk of Court showing that she has complied with Rule 30, RLDE, Rule 413, SCACR, and she shall also surrender her Certificate of Admission to the Practice of Law to the Clerk of this Court.

Within thirty (30) days of the date of this opinion, Respondent shall pay or enter into a reasonable payment plan with the Commission on Lawyer Conduct to: (1) pay the costs incurred in the investigation and prosecution of this matter by Disciplinary Counsel and the Commission; (2) reimburse Client C in the amount of $500; and (3) reimburse the Lawyers' Fund for Client Protection for any claims paid on Respondent's behalf.

**DISBARRED.**

**BEATTY, C.J., KITTREDGE, HEARN, FEW and JAMES, JJ., concur.**